IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERT YATES, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. _ 1:10-cv-02546-RWS- |
| v. | ) | |
| | ) | |
| GMAC MORTGAGE LLC, | ) | REMOVED FROM DEKALB COUNTY |
| | ) | SUPERIOR COURT, CASE NO. |
| | ) | 10CV9462-4 |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

Comes now Defendant and responds in opposition to Plaintiff's request for injunctive relief, as follows:

It is well-settled that a preliminary injunction is an "extraordinary and drastic remedy." *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985) (citations omitted). To obtain such relief, a movant must demonstrate: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of an injunction; (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued; and (4) an injunction would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002). A preliminary injunction should not be granted unless

the movant clearly carries the burden of persuasion as to these four elements. *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. V. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).

Here, plaintiff cannot meet this burden. Plaintiff has defaulted under his payment obligations, meaning that there is <u>no likelihood</u> that he will prevail on the merits of this action, must less a "substantial likelihood." Indeed, plaintiff is past due from August 2006, a staggering **four-year period of nonpayment and mortgage-free living**. Surden Dec., ¶ 10. Further, plaintiff's vague allegations that MERS is not a proper party to pursue foreclosure proceedings or not registered to transact business in Georgia, moreover, provide no basis for injunctive relief. Under Georgia law, "making loans or creating or acquiring evidences of debt, mortgages, or liens on real or personal property, or recording same" and "securing or collecting debts or enforcing any rights in property securing same" do not constitute transacting business. O.C.G.A. § 14-3-1501.

Plaintiff, moreover, fails to establish the other requirements for injunctive relief. Here, the only harm that would result from an injunction would be to the defendant, based on its inability to pursue its foreclosure rights under the Security Deed and the Promissory Note. An injunction would

provide no remedy for plaintiff's overwhelming monetary default, and would in fact give a 'judicial blessing' to plaintiff's continued non-payment, and may encourage other borrowers to pursue similar conduct of nonpayment which would clearly disserve the public interest.

Plaintiff has also failed to tender any security, precluding the entry of a temporary restraining order or injunction in this matter. Fed.R.Civ.P. 65(c) requires plaintiffs to give adequate security as a condition of any injunctive relief:

> The court may issue a preliminary injunction or a temporary restraining order **only if** the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

(emphasis added).[1] Interpreting Rule 65 in light of a lender's rights of foreclosure in Georgia, this Court has previously held that a defaulting borrower in Georgia who does not make a tender of past due amounts on the loan, lacks standing to even prosecute a claim for injunctive relief against his lender's foreclosure sale:

> ...under Georgia law, a borrower who executes

---

[1] Although this action was initially filed in state court, Georgia law similarly provides that security may be required "[a]s a prerequisite to the issuance of a restraining order or an interlocutory injunction." O.C.G.A. § 9-11-65(c).

a security deed and defaults on a loan cannot enjoin a foreclosure sale unless he has first paid the full amount due. Mickel v. Pickett, 241 Ga. 528, 535, 247 S.E.2d 82 (Ga.Ct.App.1978). Because plaintiff has not shown that he made any attempt to cure his default by paying the remainder of his debt, he cannot bring an action to stop the foreclosure sale of his property. See Smith Citizens & S. Fin. Corp., 245 Ga. 850, 268 S.E.2d 157, 159 (Ga.1980); Mickel, 247 S.E.2d at 87 ("A borrower who has executed a [security deed] is not entitled to enjoin a foreclosure sale unless he first pays or tenders to the lender the amount admittedly due.") (citations omitted). The undisputed facts demonstrate that plaintiff agreed to the terms of the … mortgage loan made by Wachovia when he signed the Note and Security Deed … Plaintiff has not provided any evidence showing that he tendered the full amount of the loan or any portion thereof. Thus, under Georgia law, plaintiff has no standing to bring an action to enjoin the foreclosure sale.

*Taylor v. Wachovia*, 2009 WL 249353 (slip copy), at *5, fn.6 (N.D. Ga., January 30, 2009).

Here, although plaintiff owes past-due amounts under the loan, he has failed to tender any past-due funds, nor has he made any offer to do so.[2] "He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." O.C.G.A. § 23-1-10. This equitable maxim embodies both the "unclean hands"

---

[2] Pursuant to Fed.R.Civ.P. 65(c), plaintiff must be required to tender a minimum of **$151,640.46** into the Court's registry as security for any requested injunction, which represents the amount necessary at a minimum to reinstate plaintiff's loan to a non-default status. Surden Dec., ¶ 10.

doctrine and the concept that "one will not be permitted to take advantage of his own wrong." *Musgrove v. Musgrove*, 213 Ga. 610, 100 S.E.2d 577 (1957); *Pryor v. Pryor*, 263 Ga. 153, 429 S.E.2d 676 (1993). Plaintiff owes defendant mortgage payments for the month of August **2006** and all succeeding payments, an incredible four-year deficiency on the loan at issue. Surden Dec., ¶ 10. Despite this staggering, incomprehensible arrearage, however, Plaintiff comes to court empty-handed, offering nothing in the way of security to satisfy the mandate of Fed.R.Civ.P. 65 or its counterpart, O.C.G.A. § 9-11-65. His request for an order enjoining defendant's foreclosure must be denied.

Lastly, under the federal statutes invoked in Plaintiff's Complaint (TILA and RESPA), there exists no basis for injunctive relief. *Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008) (no injunctive relief under TILA); *Mullinax v. Radian Guar. Inc.*, 199 F.Supp.2d 311 (M.D.N.C. 2002); *Minter v. Wells Fargo Bank, N.A.* 593 F.Supp.2d 788 (D.Md. 2009) (no injunctive relief under RESPA).

CONCLUSION

Plaintiff's four-year arrearage on the loan in question can be the basis for only one outcome: an immediate dismissal of this action and an immediate denial of Plaintiff's request for injunctive relief.

Respectfully submitted this 13 day of August, 2010.

MCCURDY AND CANDLER, L.L.C.

By: _____
    Frank R V Olson
    Georgia Bar No. 553077
    Attorneys for Defendant

Six Piedmont Center, Suite 700
3525 Piedmont Road, N.E.
Atlanta, GA 30305
(404) 214-5829 direct
(678) 891-5769 direct fax
folson@mccurdycandler.com
**\*\*\*Please note counsel's new address\*\*\***

## CERTIFICATION

I HEREBY CERTIFY: (a) that this document was prepared using the Microsoft Word 2003 word processing program, (b) that it was prepared using the Courier New 12 point font and otherwise in full compliance with LR 5.1, NDGa, and (c) that I have this day caused to be sent by U.S. Mail, with adequate postage affixed to the envelope containing same, a copy of the within and foregoing pleading to the following recipients:

Robert Yates

2820 Greystone Cove South

Atlanta, GA 30341

This 13 day of August, 2010.

MCCURDY AND CANDLER, L.L.C.

By: _____
Frank R. Olson
Georgia Bar No. 553077
Attorneys for Defendant

Six Piedmont Center, Suite 700
3525 Piedmont Road, N.E.
Atlanta, GA 30305
(404) 214-5829 direct
(678) 891-5769 direct fax
folson@mccurdycandler.com
**\*\*\*Please note counsel's new address\*\*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERT YATES, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. __1:10-cv-02546-RWS |
| v. | ) | |
| | ) | |
| GMAC MORTGAGE LLC, | ) | REMOVED FROM DEKALB COUNTY |
| | ) | SUPERIOR COURT, CASE NO. |
| | ) | 10CV9462-4 |
| Defendant. | ) | |

## DECLARATION OF TODD HARRIS SURDEN

I, the undersigned, Todd Harris Surden, pursuant to 28
U.S.C. § 1746, declare under penalty of perjury that the
foregoing is true and correct:

1.

I am an attorney licensed in good standing in the State of
Georgia. I am employed by McCurdy & Candler, LLC ("McCurdy &
Candler"), which represents defendant in this action.

2.

I base this Declaration on my own personal knowledge of the
facts contained herein and on my own personal knowledge of the
records of McCurdy & Candler, I am competent to testify regarding
those things about which I have personal knowledge, and I am over
18 years old.

3.

I am a custodian of and familiar with the business records at McCurdy & Candler, which include the documents regarding the plaintiff, the defendant and the real property commonly known as 2820 Greystone Cove South, Atlanta, DeKalb County, GA 30341 (the "Property") and the loan transaction encumbering the Property (the "Loan") that is the subject of this action.

4.

McCurdy & Candler keeps and maintains its records at the office of which I am employed.

5.

Entries were made to McCurdy & Candler's business records at or near the time that the action occurred, and the entries were subsequently reviewed for accuracy.

6.

It is the regular practice of McCurdy & Candler to make the business records regarding the plaintiff, the defendant, the Property and the Loan that is the subject of this action, and those records were made as part of, and kept in the course of, a regularly and ordinarily conducted business activity of McCurdy & Candler.

7.

I am personally familiar with the contents of the entire

2

file that McCurdy & Candle created, keeps and maintains relating to the plaintiff, the defendant, the Property and the Loan that is the subject of this action.

8.

This file and all of its contents are made, kept, updated and maintained in the regular and ordinary course of business of McCurdy & Candler at or near the time of the events reflected therein, and I am personally familiar with the business practices of McCurdy & Candler as they relate to the making, keeping and maintaining of McCurdy & Candler's business records.

9.

On June 15, 2010, McCurdy & Candler, LLC received an electronic referral from defendant GMAC Mortgage, LLC for foreclosure of the Loan and the Property that is the subject of this action, due to plaintiff's monetary default on the Loan.

10.

Included in the electronic referral received by our firm was the following information regarding the default status of the Loan that is the subject of this action, good through June 15, 2010:

| | |
|---|---|
| Monthly payment amount: | $ 3,321.37 |
| Contractually due for: | August 1, 2006, and succeeding payments |
| Escrow balance due: | $33,067.56 |

```
Past due amounts
(34 payments @ $3,321.37):        $112,926.58

Late fees (5% of past
due amounts per attached
Note):                            $  5,646.32

Total to reinstate as
    of June 9, 2010:             $151,640.46
```

This 13th day of August, 2010.

_____
Todd Harris Surden

# ADJUSTABLE RATE NOTE

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| | | |
|---|---|---|
| November 8, 2005 | Atlanta | Georgia |
| [Date] | [City] | [State] |

2820 GREYSTONE COVE SOUTH, Atlanta, GA 30341
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 412,785.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.000 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on January 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 12/01/2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $3,321.37 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

1004642006

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT

-838N (0210)        Form 3520 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4        Initials: _____

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of December, 2007 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Five And Ninety-five Hundredth(s) percentage points ( 5.950 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.500 % or less than 9.000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.000 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of `fifteen` calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be `5.000` % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

1004642006



Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ROBERT L YATES                    -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                          -Borrower


Pay to the order of, without recourse          [Sign Original Only]
New Century Mortgage Corporation
By: _____
Steve Nagy
V.P. Records Management

1004642006

-838N (0210)                                                                   Form 3520 1/ 01

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **8th** day of **November, 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **New Century Mortgage Corporation**

("Lender") of the same date and covering the property described in the Security Instrument and located at: **2820 GREYSTONE COVE SOUTH, Atlanta, GA 30341**

### [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **9.000 %**. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The interest rate I will pay may change on the first day of **December, 2007** , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five And Ninety-five Hundredth(s)** percentage points ( **5.950 %**) to the Current Index. The Note Holder will then round the result of

**1004642006**

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument

VMP-838R (0402) Form 3138 1/01

Page 1 of 3  Initials: _m_

VMP Mortgage Solutions, Inc.

(800)521-7291

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.500** % or less than **9.000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage points ( **1.500** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **16.000** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

1004642006

Initials: _____

**VMP®-838R (0402)**          Page 2 of 3          **Form 3138  1/01**

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
ROBERT L YATES                    -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                        -Borrower


1004642006

VMP-838R (0402)                   Page 3 of 3                   Form 3138 1/01

# ADJUSTABLE RATE RIDER ADDENDUM
### (Libor Index - Rate Caps)

This Adjustable Rate Rider Addendum is made this **8th** day of **November 2005**,
and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the
"Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's
Note to

**New Century Mortgage Corporation** (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

**2820 GREYSTONE COVE SOUTH, Atlanta, GA 30341**
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the
provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall
prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or
Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and
Lender further covenant and agree as follows:

**4.    (D) LIMITS ON INTEREST RATE CHANGES**
The interest rate I am required to pay at the first change date will not be greater than
**10.500** % or less than **9.000** %. Thereafter, my interest rate
will never be increased or decreased on any single Change Date by more than
**One And One-half** percentage point(s) ( **1.500** %) from
the rate of interest I have been paying for the preceding **6** months. My interest rate will never be
greater than **16.000** % or less than **9.000** %.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider Addendum.

_Robert L Yates_
**ROBERT L YATES**

# PREPAYMENT RIDER
## ADJUSTABLE RATE LOAN

This Prepayment Rider is made this 8th day of November 2005 , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation** (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

## 5. BORROWERS RIGHT TO PREPAY

I have the right to make prepayments of principal any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless: the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

If within 2 year(s) from the date of execution of the Security Instrument, I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of 6 months advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Robert L. Yates_
**ROBERT L YATES**

## CERTIFICATION

I HEREBY CERTIFY: (a) that this document was prepared using the Microsoft Word 2003 word processing program, (b) that it was prepared using the Courier New 12 point font and otherwise in full compliance with LR 5.1, NDGa, and (c) that I have this day caused to be sent by U.S. Mail, with adequate postage affixed to the envelope containing same, a copy of the within and foregoing pleading to the following recipients:

Robert Yates

2820 Greystone Cove South

Atlanta, GA 30341

This 13 day of August, 2010.

MCCURDY AND CANDLER, L.L.C.

By: _____
Frank R. Olson
Georgia Bar No. 553077
Attorneys for Defendant

Six Piedmont Center, Suite 700
3525 Piedmont Road, N.E.
Atlanta, GA 30305
(404) 214-5829 direct
(678) 891-5769 direct fax
folson@mccurdycandler.com
**\*\*\*Please note counsel's new address\*\*\***

5